***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement admitted into evidence as Stipulated Exhibit #1 as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On 16 September 1996 an employment relationship existed between plaintiff and defendant-employer.
3. On 16 September 1996 Builders Mutual Insurance Company was the carrier at risk.
4. Plaintiff sustained a compensable injury arising out of and in the course of his employment on 16 September 1996. The Industrial Commission approved a Form 21 Agreement on 28 January 1997.
5. Four letters are admitted into evidence as Stipulated Exhibit #2 with two letters dated 17 February 1998, one dated 13 February 1998, and one dated 10 April 1997.
6. Plaintiff's medical records are admitted into evidence.
7. Defendants have provided attendant care for plaintiff at a rate of:
(a) $105.00 per day from 2 May 1997 through 16 February 1998 consisting of $7.00 per hour for fifteen hours per day; and,
(b) $150.00 per day from 17 February 1998 through the present consisting of $7.00 per hour for fifteen hours per day and $5.00 per hour for nine hours per day.
 ***********
Based upon all of the competent evidence contained in the record, and the reasonable inferences drawn therefore, the Full Commission enters the following:
 FINDINGS OF FACT
1. On 16 September 1996, plaintiff was a 22 year old male employed by defendant-employer as a laborer. Plaintiff is a native of Mexico and currently has no legal papers to work and live in the United States. Plaintiff does not read or understand English and requires an interpreter to communicate with non-Spanish speaking persons.
2. On 16 September 1996, plaintiff suffered an injury by accident arising out of and in the course of his employment when he fell 40 feet from an elevated bucket while clearing trees.
3. Plaintiff received treatment at Wake Forest Medical Center. As a result of plaintiff's compensable injury, he sustained a right collapsed lung, subarachnoid hemorrhage fractures of the right orbit, multiple bilateral rib fractures and a closed head injury. Plaintiff underwent a fusion and thoracic/lumbar spine Harrington Rod instrumentation on 26 September 1996, a tracheostomy on 2 October 1996 and an application of a halo splint and gastrostomy tube on 3 October 1996.
4. Plaintiff was transferred from Wake Forest Medical Center to Shephard Center in Atlanta, Georgia on 24 October 1996. Plaintiff was eventually weaned off the ventilator and became mobile with a sip and puff wheelchair. Plaintiff exhibited significant cognitive impairments.
5. In December 1996, plaintiff entered Hillhaven Nursing Home and remained there until 2 May 1997 when he was discharged home. While at Hillhaven, plaintiff had to be hospitalized for headaches, urinary tract infections, Grade III sacral ulcer and urosepsis.
6. In May 1997, plaintiff was discharged home to an apartment where he lives with his mother, his sister, Sylvia, and her young son. Plaintiff's family members came from Mexico to North Carolina when plaintiff sustained his injuries. Sylvia is plaintiff's primary caretaker.
7. As a result of plaintiff's compensable injury, he requires attendant care 24 hours per day. From May 1997 to February 1998, defendants paid $7.00 per hour for 15 hours of attendant care per day, seven days per week, by verbal agreement of the parties. Subsequent to February 1998, by agreement between defendant's and plaintiff's former counsel, defendants paid attendant care for 15 hours per day at $7.00 per hour and nine hours per day at $5.00 per hour, seven days per week.
8. In order to make plaintiff's home accessible to plaintiff, defendants paid $10,000.00 for renovations. Additionally, defendants contribute $335.00 per month toward plaintiff's rent, per agreement between the parties. This amount is in addition to the temporary total disability compensation plaintiff receives. Total rent for the apartment is $635.00 per month. Sylvia pays the remaining $300.00 per month. Plaintiff's mother does not contribute to the rent and has only assisted in the payment of utilities for one month.
9. The total money the family and plaintiff currently receives is $64,000.00 per year. This money is paid to Abel Vallejo as Attorney-in-Fact and appears to go into a family pot and used for "family" expenses. This payment arrangement was not ordered by the Commission.
10. Sylvia is not a licensed practical nurse and has received no formal training. Sylvia received instruction on how to care for plaintiff at Shephard Center and additional training on catheter care with Interim Health Care. Sylvia is plaintiff's primary care giver, and plaintiff's mother assists as well. The mother has not received any training in caring for individuals with plaintiff's injuries except instruction from Sylvia.
11. As a quadriplegic, plaintiff is at a greater risk of developing decubitis ulcers due to increased spasticity. It is important that plaintiff take his medication to reduce the risk of ulcers. It is likewise important plaintiff shift his weight in his wheelchair to reduce the risk of decubitus ulcers. Plaintiff has had recurrent urinary tract infections and now has a suprapubic catheter which was inserted right through the abdomen into the bladder.
12. Plaintiff does not want anyone other than family members caring for him, specifically his mother and sister, Sylvia. Sylvia sometimes forgets plaintiff's medications and fails to remind plaintiff to shift his weight every 15 to 30 minutes. Sylvia also does not wish to continue as her brother's primary caretaker for much longer and is in need of respites to avoid burnout. As it is now, Sylvia, who is about 27 years of age, has no life of her own and cannot even spend time with her young son, who is about six years of age. Sylvia is only able to get away from her caretaker duties about twice a week, approximately one hour at a time. During these times, Sylvia goes grocery shopping for the family and picks up medications. Plaintiff has severe cognitive impairment, and his wishes alone cannot dictate his care.
13. The greater weight of the medical evidence is plaintiff is in need of a Certified Nursing Assistant (CNA) to care for him during his waking hours, an average of 12 hours per day. A CNA is better trained than plaintiff's family. In addition to providing for plaintiff's basic needs, a CNA also knows how to recognize signs of autonomic dysreflexia in spinal cord patients, recognize if plaintiff becomes febrile, etc. A CNA is allowed to administer medications in a home environment under certain circumstances.
14. A CNA cannot coordinate the administration of medication; therefore, a Registered Nurse (RN) or Licensed Practical Nurse (LPN) will be required to do this on a regular basis.
15. Plaintiff is in need of the equivalent of a sitter or companion for 12 hours at night while plaintiff is in bed. Plaintiff's needs during this time are minimal as he only needs to be turned every two hours. Plaintiff needs someone during this time for safety concerns and if he needs anything. Plaintiff's sister or mother is capable of providing for plaintiff's care during the 12 hours at night.
16. Sitters who work for themselves are paid around minimum wage, but those who work out of agencies are paid more per hour. The hourly rate of $7.00 is reasonable to pay a family member with some training who is available for plaintiff at night and who may be called upon to assist with plaintiff's care at plaintiff's request during daytime hours when not being paid.
17. There was an agreement between plaintiff's former counsel and defendant regarding amounts to pay plaintiff's family for attendant care. As part of this agreement, defendants would pay $5.00 per hour for nine hours per day and $7.00 for 15 hours per day, effective 17 February 1998. Also as part of this agreement defendants would pay $335.00 toward plaintiff's rent. Defendants request that if the Commission sets aside any agreement as to amounts of attendant care, that the Commission also release defendants from their promise to contribute toward the rent. Defendants' agreement to pay rent was a voluntary, separate arrangement between the parties.
18. Plaintiff has requested that defendants increase the amount of attendant care paid to the family retroactively. The amount paid by defendants for attendant care pursuant to the agreement of the parties was not unreasonable considering the entire agreement.
19. At the time of hearing before the Deputy Commissioner, defendants provided transportation for plaintiff and his family to all medical appointments. Defendants also provided transportation for two pleasure trips per month. The greater weight of the evidence is that plaintiff is depressed, and greater socialization would improve plaintiff's overall health. Defendants offered to purchase a handicapped-accessible van for plaintiff. Since the hearing before the Deputy Commissioner, plaintiff has accepted the handicapped-accessible van.
20. Plaintiff had only worked for defendant-employer 11 days prior to the date of his compensable injury. There was no Form 22 Wage Statement completed. After plaintiff was injured, his brother, Abel, was asked to sign the Form 21 to allow plaintiff to start receiving benefits. The amount noted on the Form 21 as plaintiff's average weekly wage was $280.00 per week. This amount was based solely on earnings of $7.00 per hour for a 40 hour workweek. The Form 21 was not explained to Abel and he speaks very little English. The Form 21 was signed by Abel Vallejo and approved by the Commission.
21. Plaintiff did not receive his first paycheck from defendant-employer until after his compensable injury. A pay stub dated 20 September 1996, reflected gross earnings in the amount of $316.75 for 43 1/2 hours. This was the only paycheck plaintiff ever received from defendant-employer.
22. Defendant-employer was no longer in business at the time of hearing. Defendant-employer was only engaged in business a short time, primarily for the purpose of clearing debris after Hurricane Fran. There is no evidence of wages from a similar employee. Defendants were unable to provide a Form 22 Wage Statement since defendant-employer no longer exists and defendant-carrier could not locate defendant-employer for testimony.
23. The greater weight of the evidence is that it is more fair and just to both parties to determine plaintiff's average weekly wage based upon the weekly wages plaintiff actually earned during his brief employment with defendant-employer. An average weekly wage of $316.75 yields a compensation rate of $211.18 per week.
24. Plaintiff's brother, Abel Vallejo, currently handles all plaintiff's business affairs. Executive Secretary Tracey Weaver approved plaintiff's brother, Abel Vallejo, as plaintiff's Guardian Ad Litem on a Form 42 filed 9 December 1996 for the purpose of bringing this action in plaintiff's behalf. Plaintiff has not been judged incompetent. The basis for the Application for Guardian ad Litem was that plaintiff is a quadriplegic and cannot write. To support the application, plaintiff attached a copy of a Power of Attorney signed by Abel Vallejo, plaintiff's brother, on October 1996 which was witnessed by two people and notarized. Abel signed his name in place of plaintiff's. Plaintiff did not sign the Power of Attorney. The Power of Attorney filed by plaintiff lists under the powers the following: "Real property transactions; Personal property transactions; Bond, share, stock, securities and commodity transactions; Banking transactions; Safe deposits; Business operating transactions; Insurance transactions; Personal relationships and affairs; Social security and unemployment; Benefits from military service; Tax matters; Employment of agents; Workers' compensation transactions and/or settlement; and Gifts to named attorney-in-fact." Also pursuant to this Power of Attorney, plaintiff waived all requirements of accounting to the Clerk of Superior Court. The Commission does not recognize this Power of Attorney as a properly executed document. No compensation in a workers' compensation case may be paid directly to a person serving solely in the capacity of Guardianad Litem. However, it appears in this instance, Abel receives all of plaintiff's benefits, including those for dependent care which is paid to plaintiff rather than directly to plaintiff's sister, Sylvia.
This money then goes into the "family pot" where many family members appear to benefit. It is the opinion of the Commission based upon the entire record and upon observations of plaintiff and his family at the hearing, that plaintiff is in need of a guardian of his estate to protect plaintiff's own interests rather than the family's needs. There also needs to be a reporting or accounting of all of plaintiff's benefits used by Abel Vallejo.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On 16 September 1996, plaintiff sustained a compensable injury arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. As a result of plaintiff's compensable injury, he is quadriplegic and permanently and totally disabled. N.C. Gen. Stat. § 97-29.
3. Plaintiff did not work for defendant for 52 weeks prior to 16 September 1996. There is no evidence of earnings of a person of the same grade and character employed in the same class of employment in the same community. Although plaintiff only worked 43 ½ hours for defendant-employer, it is more fair and just to both parties to use the actual wages plaintiff earned during that period. This results in an average weekly wage of $316.75, with a compensation rate of $211.18 per week. Plaintiff is entitled to a correction in the amount of his benefits, retroactive to 16 September 1996. The amount which has accrued shall be paid in a lump sum, subject to attorney's fees. N.C. Gen. Stat. § 97-2(5).
4. Plaintiff is in need of 24 hour care. The greater weight of the medical evidence is that plaintiff is in need of care by a Certified Nursing Assistant for 12 hours per day, and plaintiff is in need of care at a companion or sitter level for 12 hours a day during the night.
5. A reasonable wage for a sitter or companion with some training and instruction on how to care for plaintiff's special needs is $7.00 per hour. Plaintiff's sister or mother is entitled to this amount per hour for the nighttime care of plaintiff. The Commission does not order this payment to be retroactive as the Commission lacks jurisdiction over the prior agreement between the parties concerning the amounts to be paid for attendant care.
6. Plaintiff is in need of transportation for pleasure and social trips each month and for medical treatment. Defendants have offered a handicapped accessible van which is reasonable.
7. Plaintiff is entitled to have defendants provide all medical treatment arising from his 16 September 1996 compensable injury to the extent it tends to effect a cure, give relief or lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff permanent and total disability at a compensation rate of $211.18 per week from 16 September 1996 and continuing for the remainder of plaintiff's life. Defendants shall receive credit for those amounts of total disability compensation already paid to plaintiff. Those amounts which have accrued shall be paid in a lump sum, subject to attorney's fees.
2. Defendants shall provide 24 hour attendant care for plaintiff. Twelve hours of care shall be provided by a Certified Nursing Assistant, and 12 hours at nighttime by a companion or sitter. Monies paid for this care shall go directly to the provider of the care. If Sylvia or plaintiff's mother acts as plaintiff's sitter or companion at night, the rate of pay per hour shall be $7.00 and shall be paid weekly directly to Sylvia or plaintiff's mother. Defendants shall arrange a system of determining to whom the wages are owed.
3. Defendants shall provide a reasonable means of transportation to plaintiff.
4. Defendants shall pay all medical expenses incurred by plaintiff as a result of his 16 September 1996 injury by accident for the remainder of plaintiff's life.
5. Plaintiff's counsel (now withdrawn) is entitled to an attorney's fee of 25% of the lump sum awarded to plaintiff in Paragraph 1 above. Defendants shall pay one fourth of the accrued amount directly to plaintiff's counsel. Plaintiff's counsel is further entitled to an additional attorney's fee of $4,000.00 which shall be deducted and paid directly to plaintiff's counsel as follows: $50.00 per month shall be deducted until the fee is paid in full.
6. Defendants shall pay the costs.
This the ___ day of August, 2002.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER